# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:20-cv-00102-DDD-KMT

**ELLEN LARSON**
**JUSTINE LUND and**
**JAMIE and JARED BEARD,**
individually and on behalf of all others
similarly situated,

               Plaintiffs,

    v.

**THE ALIERA COMPANIES, INC.,** a
Delaware corporation;

**ALIERA HEALTHCARE, INC.,** a
Delaware corporation; and

**TRINITY HEALTHSHARE, INC.,** a
Delaware corporation,

               Defendants.

---

## TRINITY HEALTHSHARE, INC.'S MOTION TO DISMISS

**TABLE OF CONTENTS**

**Page**

I.      Statement of Facts...........................................................................................................1

    A.      Plaintiffs' Allegations..........................................................................................1

        1.      Plaintiff Larson and the Beard Plaintiffs. ...............................................1

        2.      Plaintiff Lund. ........................................................................................3

    B.      Colorado Investigation. .......................................................................................3

II.     Legal Standards...............................................................................................................3

    A.      F.R.C.P. 12(b)(1)..................................................................................................3

    B.      F.R.C.P. 12(b)(6)..................................................................................................4

    C.      Federal Rule of Civil Procedure 9(b). ..................................................................5

III.    Argument.........................................................................................................................5

    A.      Plaintiffs Fail to Plead Subject Matter Jurisdiction. .............................................5

    B.      The Plaintiffs Lack Standing. ...............................................................................5

        1.      Any Alleged Harm is Not Fairly Traceable to Trinity. ............................6

            a.      Larson. .........................................................................................6

            b.      Lund. ............................................................................................8

            c.      The Beards.....................................................................................8

        2.      Plaintiffs Lund and the Beards Also Fail to Allege an Injury-in-Fact. .............9

    C.      Plaintiffs' Claims Should be Dismissed Pursuant to Rule 9(b) and Rule 12(b)(6). .....10

        1.      Plaintiffs Fail to Plead Their CCPA Claim With Particularity.........................10

        2.      Plaintiffs Fail to Allege Deceptive Trade Practices...........................................12

        3.      Plaintiffs Fail to Allege a Public Impact. .............................................13

        4.      Plaintiffs Fail to Plead a Breach of Fiduciary Duty...........................................13

i

       D.        Alternatively, the Court Should Abstain. ..........................................................................14

IV.     Conclusion.........................................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexander & Alexander, Inc. v. Frank B. Hall & Co.,*
    No. CIV. A. 88-A-1621, 1990 WL 8028 (D. Colo. Jan. 31, 1990) ....................................................... 7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ......................................................................................................................... 4, 12

*Basso v. Utah Power & Light Co.,*
    495 F.2d 906 (10th Cir. 1974) ............................................................................................................. 3

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ......................................................................................................................... 4, 12

*Bewley v. Semler,*
    432 P.3d 582 (Colo. 2018) ................................................................................................................... 5

*Broadview Fin., Inc. v. Entech Mgmt. Servs. Corp.,*
    859 F.Supp. 444 (D.Colo.1994) .......................................................................................................... 4

*Burford v. Sun Oil Co.,*
    319 U.S. 315 1424 (1943) .................................................................................................................. 14

*Casanova v. Ulibarri,*
    595 F.3d 1120 (10th Cir. 2010) ........................................................................................................... 4

*Chapman v. Oklahoma,*
    472 F.3d 747 (10th Cir. 2006) ........................................................................................................... 14

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ............................................................................................................................. 9

*Colucci v. Nat'l Bd. of Chiropractic Examiners,*
    No. 18-CV-02085-CMA-STV, 2020 WL 364563 (D. Colo. Jan. 22, 2020) ....................................... 6

*Duran v. Clover Club Foods Co.,*
    616 F.Supp. 790 (D.Colo.1985) ........................................................................................................ 10

*Forest City Stapleton Inc. v. Rogers,*
    393 P.3d 487 (Colo. 2017) ................................................................................................................... 5

*Gallagher v. Shelton,*
    587 F.3d 1063 (10th Cir. 2009) ........................................................................................................... 4

*Garcia v. Medved Chevrolet, Inc.*,
    263 P.3d 92 (Colo. 2011)..................................................................................................12

*Grider v. City & Cty. of Denver*,
    958 F. Supp. 2d 1262 (D. Colo. 2013) ...............................................................................9

*Grimes v. Crown Life Ins. Co.*,
    857 F.2d 699 (10th Cir. 1988).........................................................................................14

*Hansen v. Auto–Owners Ins. Co.*,
    No. 09–cv–02736, 2010 WL 749820 (D.Colo. Mar. 4, 2010)................................... 10, 12

*Hansen v. Harper Excavating, Inc.*,
    641 F.3d 1216 (10th Cir. 2011) .........................................................................................5

*HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*,
    805 F. Supp. 2d 1115 (D. Colo. 2011) .......................................................10, 11, 12, 13

*Henson v. Bank of Am.*,
    935 F. Supp. 2d 1128 (D. Colo. 2013) ...............................................................................4

*Hernandez v. United Builders Serv., Inc.*,
    No. 18-CV-02019-RM-SKC, 2019 WL 4744788 (D. Colo. Sept. 30, 2019).......................3

*Hiland Hills Townhouse Owners Ass'n, Inc. v. Owners Ins. Co.*,
    No. 17-CV-1773-MSK-MEH, 2018 WL 1993423 (D. Colo. Apr. 27, 2018) .....................6

*Holt v. United States*,
    46 F.3d 1000 (10th Cir. 1995).......................................................................................4, 7

*Ivar v. Elk River Partners*,
    LLC, 705 F. Supp. 2d 1220 (D. Colo. 2010) ......................................................................6

*Koch v. Koch Indus., Inc.*,
    203 F.3d 1202 (10th Cir. 2000) .......................................................................................10

*Lacy v. Old Standard Life Ins., Inc.*,
    No. 04-CV-02351-EWN-OES, 2005 WL 8171866 (D. Colo. Sept. 8, 2005).................15

*Lehman v. City of Louisville*,
    967 F.2d 1474 (10th Cir. 1992) ......................................................................................14

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992).......................................................................................................5, 9

*Martinez v. Lewis*,
    969 P.2d 213 (Colo. 1998) (*en banc*) ...........................................................................13

*Middleton v. Stephenson,*
    749 F.3d 1197 (10th Cir. 2014) .................................................................. 5

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,*
    491 U.S. 350 ............................................................................................. 14

*RCHFU, LLC v. Marriott Vacations Worldwide Corp.,*
    No. 16-CV-01301-PAB-GPG, 2018 WL 1535509 (D. Colo. Mar. 29, 2018) ................ 13

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.,*
    62 P.3d 142 (Colo. 2003) .................................................................. 6, 12, 13

*Robbins v. Oklahoma,*
    519 F.3d 1242 (10th Cir. 2008) .................................................................. 4

*RV Horizons, Inc. v. Smith,*
    No. 1:18-CV-02780-NYW, 2019 WL 1077366 (D. Colo. Mar. 7, 2019) ................. 11

*Smith v. United States,*
    561 F.3d 1090 (10th Cir. 2009) ............................................................... 2, 4

*Spokeo, Inc. v. Robins,*
    136 S.Ct. 1540 (2016) ............................................................................. 5

*Stuart v. Colorado Interstate Gas Co.,*
    271 F.3d 1221 (10th Cir. 2001) ............................................................... 2, 4

*Two Moms & a Toy, LLC v. Int'l Playthings, LLC,*
    898 F. Supp. 2d 1213 (D. Colo. 2012) ......................................................... 12

*US Fax Law Ctr., Inc. v. iHire, Inc.,*
    374 F. Supp. 2d 924 (D. Colo. 2005), *aff'd*, 476 F.3d 1112 (10th Cir. 2007) ................ 6

*Western Distributing Co. v. Diodosio,*
    841 P.3d 1053 (Colo. 1992) ...................................................................... 6

*Winn v. Cook,*
    945 F.3d 1253 (10th Cir. 2019) ................................................................. 14

*Younger v. Harris,*
    401 U.S. 37 (1971) ........................................................................... 14, 15

**Statutes**

C.R.S § 10-1-101 ................................................................................... 15

C.R.S. §§ 10-1-108(5) .............................................................................. 15

28 U.S.C. § 1332(d) .................................................................................. 5

**Rules**

F.R.C.P. 12(b)(1) ................................................................................................................... 1, 2, 3

F.R.C.P. 12(b)(6) ...................................................................................................................1, 4, 11, 12

Rule 9(b) ............................................................................................................................ 1, 4, 10

Rule 9(b) and Rule 12(b)(6) ...................................................................................................10

Rule 56.................................................................................................................................4

Defendant Trinity Healthshare, Inc. ("Trinity") moves to dismiss Plaintiffs' First Amended Class Action Complaint (Dkt. #18.) under F.R.C.P. 12(b)(1) for failure to establish diversity jurisdiction and for lack of standing.[1] In the alternative, Trinity moves to dismiss Plaintiffs' claims against Trinity,[2] in whole or in part, pursuant to F.R.C.P. 12(b)(6) for failure to state a claim, and pursuant to Rule 9(b) for failure to plead with particularity. In the alternative, Trinity requests that the Court abstain from exercising jurisdiction.[3]

## I.   STATEMENT OF FACTS.

### A.   Plaintiffs' Allegations.

The gravamen of Plaintiffs' Complaint is that "Defendants sold unfair and deceptive health care plans to Colorado residents." (*See, e.g., id.*, ¶ 11.) These programs were allegedly "unfair and deceptive" because they: (a) "look" like insurance; (b) provide too-little coverage for members; and/or (c) inappropriately claimed to be part of a Health Care Sharing Ministry ("HCSM"). (*Id.*, ¶¶ 11-14, 17, 41-45, 49-50, 54-58.) Plaintiffs allege the programs "qualify as insurance" while failing to meet applicable insurance regulations. (*Id.*, ¶¶ 15-16, 47, 49-50, 54-64.) But Trinity can discern no direct relationship between these general allegations in the Complaint and the individual claims of the named plaintiffs against Trinity. (*See id.*, ¶¶ 70-94.)

### 1.   Plaintiff Larson and the Beard Plaintiffs.

Plaintiffs Larson and Jared and Jamie Beard (the "Beards") enrolled in an HCSM operated by Unity, an entity unaffiliated with Trinity. Larson enrolled with Unity in July 2018. (Compl., ¶ 70; *see also* Exhibit A.) The Beards enrolled in August 2018. (Compl., ¶ 88.)

---

[1] Trinity incorporates by reference Aliera's position that since Larson lacks standing to assert her claims against Trinity, she lacked standing to amend her complaint.

[2] Plaintiffs' unjust enrichment claim is alleged only against Aliera. (Compl., ¶¶ 117-120.)

[3] Plaintiffs have not alleged any legally cognizable dispute between them and Trinity. Should Plaintiffs succeed in convincing this Court that there is an active and justiciable controversy between the parties, Trinity reserves its right to compel arbitration.

Larson alleges that on August 3, 2018, a month after she enrolled in Unity's HCSM, she was attacked and incurred medical expenses. (*Id.,* ¶ 76.) These are the only expenses in the complaint for which Larson alleges she was improperly denied reimbursement. (*Id.*, ¶¶ 76, 78-81.)

On November 15, 2018, Aliera, who administered Unity's HCSM, sent an opt-out notice to certain legacy Unity members, including Larson, which informed her that ***"[b]eginning*** January 1, 2019" Trinity would act as Aliera's new HCSM partner. (*Id.,* ¶ 72; Exhibit B; Compl., App'x A, ¶¶ 91-95.)[4] (emphasis added). The notice provided Unity members an electronic opt-out option. (*Id.*) On December 10, 2018, several weeks *before* the prospective transition to Trinity, Larson opted out, (Exhibit C), and terminated her membership with Unity effective December 31, 2018. (Compl. ¶ 77.)

The Beards received notice of an opportunity to transition from Unity to Trinity's HCSM in May 2019, (*Id.,* ¶ 90), provided authorization on May 30, 2019, (Exhibit D), which became effective on June 14, 2019. (Exhibit E, Joseph Guarino Declaration ("Guarino Decl."), ¶¶ 20-22).) The Beards terminated their membership in Trinity's HCSM on September 4, 2019. (Compl. ¶ 89; Exhibit F.)

In April 2019, almost two months before their transition to Trinity, one of the Beards' children "required surgery," but their sharing request was denied under Unity's sharing program. (Compl., ¶ 93.) Over the next few weeks, the Beards attempted to appeal this decision, but were unsuccessful. (*Id.*) The last communication the Beards received regarding this dispute is a letter dated June 4, 2019. (*Id.*) The last communication the Beards allege they sent is a letter dated June 12, 2019. (Compl., App'x X.) The denial and the communications regarding it occurred before Trinity was involved. (Exhibit D; Guarino Decl., ¶¶ 20-24.) As a result of their exchange with Unity, the Beards allege that they postponed their child's surgery. (*Id.*, ¶ 94.)

---

[4] Trinity is submitting various documents in support of its Rule 12(b)(1) motion, which it is permitted to do without converting its motion to dismiss into one for summary judgment. *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). Additionally, Trinity may refer to the documents Plaintiffs incorporate into their Complaint without converting it into a motion for summary judgment. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

The only share request received *by Trinity* occurred in September 2019, and it was approved. (Guarino Decl., ¶¶ 23-25.) Trinity has no record of ever denying a share request from the Beards. (*Id.*)

  **2.**   <u>**Plaintiff Lund.**</u>

Plaintiff Lund alleges she enrolled in a Trinity HCSM sharing program in January 2019.[5] (*Id.*, ¶ 83.) Lund alleges she was "told" during enrollment that *after* she met her "deductible" of $2,500, a certain portion of her pregnancy-related medical bills would be covered. (*Id.*, ¶ 83.) Lund alleges she made three contributions of $533.87 in January, February, and March totaling $1,601.61, before cancelling her membership in April 2019. (*Id.*, ¶¶ 83-84, 86.) Lund alleges that she cancelled her membership because "[s]he became worried" that "Defendants" would not pay her maternity benefits. (*Id.*, ¶ 86.)

  **B.**   **Colorado Investigation.**

In August 2019, the Colorado Division of Insurance ( "CDI") issued a Cease and Desist Order and investigation of Trinity. (Compl.. ¶ 65, App'x G.) Trinity and the CDI ultimately stipulated to a settlement and the agency entered an order in January 2020. (*Id.,* App'x H.) The CDI ordered an audit of all sharing requests of all Colorado members and retained oversight to inquire about specific Colorado consumers. (App'x H at ¶¶ 5-6.) Since approximately August 12, 2019, Trinity discontinued enrolling new members in Colorado, and as of January 31, 2020, no longer has any members in Colorado. (Guarino Decl., ¶¶ 26-27.)

**II.**  **LEGAL STANDARDS**

  **A.**   **F.R.C.P. 12(b)(1).**

A Rule 12(b)(1)motion  tests the Court's subject matter jurisdiction. *Hernandez v. United Builders Serv., Inc.*, No. 18-CV-02019-RM-SKC, 2019 WL 4744788, at *1 (D. Colo. Sept. 30, 2019). The party

---

[5] In paragraph of 83 of the Complaint, Lund alleges she enrolled in January 2018, but based on context it is clear that this is a typographical error. (Compl. ¶ 84 (alleging enrollment fee paid in January **2019**).)

invoking jurisdiction bears the burden of proof and "there is a presumption against its existence." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A defendant may file either a "facial" or "factual" 12(b)(1) challenge. *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). A facial attack challenges the complaint's allegations and the court is to presume the allegations are true. *Id.* A factual attack does not require courts to presume the complaint's allegations are true. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Instead, courts have "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Holt*, 46 F.3d at 1003. A factual attack does not convert the motion into a Rule 56 motion. *Stuart*, 271 F.3d at 1225.

### B.      F.R.C.P. 12(b)(6).

A court may also dismiss a complaint for failure to state a claim. *See* Fed.R.Civ.P. 12(b)(6). The Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Labels or conclusions do not satisfy the standard, nor will a "formulaic recitation of the elements of a cause of action." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Courts are not required to "accept as true legal conclusions couched as factual allegations" or "conclusory allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) ("conclusory allegations are not enough to withstand a motion to dismiss.") "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly,* 550 U.S. at 556).

### C.       Federal Rule of Civil Procedure 9(b).

Fraud claims "shall be stated with particularity." *Henson v. Bank of Am.*, 935 F. Supp. 2d 1128, 1137–38 (D. Colo. 2013); *see also Broadview Fin., Inc. v. Entech Mgmt. Servs. Corp.*, 859 F.Supp. 444, 449 (D.Colo.1994).

## III.   ARGUMENT

### A.       Plaintiffs Fail to Plead Subject Matter Jurisdiction.

Plaintiffs' Complaint fails to plead facts establishing the amount in controversy required for diversity jurisdiction. Where jurisdiction is challenged, a plaintiff must establish the jurisdictional amount by a preponderance of the evidence. *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014).

The Complaint asserts that "the amount in controversy related to the proposed class claims exceeds $75,000." (Compl., ¶ 9.) However, the allegations of the Complaint fail to establish that any of the individual named Plaintiffs claims may exceed $75,000. (*See* Compl., ¶¶ 71, 76, 84, 86, 89, 94.) And to aggregate "the proposed class claims," for diversity jurisdiction, Plaintiffs would need to allege facts sufficient to show that the matter in controversy exceeds $5,000,000, 28 U.S.C. § 1332(d), which the complaint fails to do.

### B.       The Plaintiffs Lack Standing.

The Court should also dismiss for lack of standing. A plaintiff must have standing to sue on her claims. *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1222 (10th Cir. 2011). As relevant here, standing requires alleging an injury-in-fact that is fairly traceable to Trinity's conduct. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs must show they suffered "an invasion of a legally protected interest that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 36 S.Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560).

1.      **Any Alleged Harm is Not Fairly Traceable to Trinity.**

Plaintiffs' claims do not stem from conduct fairly traceable to Trinity. To establish a contractual breach that is fairly traceable to Trinity, plaintiffs must allege they were parties to the breached contract. *See, e.g.*, *Bewley v. Semler*, 432 P.3d 582, 589 (Colo. 2018); *Forest City Stapleton Inc. v. Rogers*, 393 P.3d 487, 490 (Colo. 2017). In addition, Plaintiffs must allege an actual breach and connect it to their injury. *See, e.g.*, *Hiland Hills Townhouse Owners Ass'n, Inc. v. Owners Ins. Co.*, No. 17-CV-1773-MSK-MEH, 2018 WL 1993423, at *2 (D. Colo. Apr. 27, 2018) (citing *Western Distributing Co. v. Diodosio*, 841 P.3d 1053, 1058 (Colo. 1992)).

For their CCPA claims, Plaintiffs must allege they "'suffered injury in fact to a legally protected interest.'" *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003); *see also Ivar v. Elk River Partners*, LLC, 705 F. Supp. 2d 1220, 1241 (D. Colo. 2010) ("the CCPA injury element derives from Colorado's basic standing requirements"). A CCPA claim requires that a plaintiff allege *both* that the defendant violated the CCPA, and that its violation "cause[d] . . . the plaintiff's injury." *US Fax Law Ctr., Inc. v. iHire, Inc.*, 374 F. Supp. 2d 924, 929 (D. Colo. 2005), *aff'd*, 476 F.3d 1112 (10th Cir. 2007).

Similarly, Plaintiffs' fiduciary duty claim requires pleading injury that is fairly traceable to Trinity. *Colucci v. Nat'l Bd. of Chiropractic Examiners*, No. 18-CV-02085-CMA-STV, 2020 WL 364563, at *4 (D. Colo. Jan. 22, 2020).

a.      **Larson.**

Larson alleges that she *believed* she had a relationship with Trinity. (Compl., ¶¶ 72-74, 82.) But Larson's particular claims do not add *facts* to support this belief; in support of her contract and CCPA claims, she asserts without factual support that Trinity sold her an illegal and damaging health insurance plan. (*Id.*, ¶¶ 96 (contract claim); ¶ 99 (CCPA claim).) In support of her fiduciary duty claim,

she asserts without factual support that Trinity's control over her contributions created a fiduciary relationship between them. (*Id.*, ¶¶ 110-11.)

Larson's allegations cannot withstand either a facial or factual attack. With respect to the former, Larson alleges only that she received some documents that bore Trinity's logo. (Compl., ¶¶ 72-74, 77, 82.) She does not allege when she supposedly entered into a relationship with Trinity, on what terms, for what consideration, and how Trinity breached their agreement, each of which is fatal. *Alexander & Alexander, Inc. v. Frank B. Hall & Co.*, No. CIV. A. 88-A-1621, 1990 WL 8028, at *4 (D. Colo. Jan. 31, 1990) (existence of a valid contract is a key element in any breach claim). Moreover, Larson does not plead Trinity ever made any representation to her, and she does not plead that she ever made a sharing request to Trinity, nor does she plead that Trinity denied a sharing request. Indeed, Trinity did none of these things. (*Supra*, 1-2.) Larson's "belief" does not establish that Trinity sold her anything, entered into any form of relationship with her, and/or committed a CCPA violation that impacted her. (Compl., ¶¶ 95-115.) Accordingly, any alleged injury she suffered is not fairly traceable to Trinity.

Larson's "belief" also cannot withstand a factual attack. *Holt*, 46 F.3d at 1003 (here, the Court may not presume the truth of a complaint's allegations). Larson concedes she enrolled in Unity's HCSM, (Compl., ¶ 70), and she ended her relationship with Unity in December 2018, months prior to the date any legacy Unity members were permitted to transfer to Trinity's sharing program (thereby making it impossible that she entered into a contract with Trinity, relied on Trinity's representations, and/or had her contributions controlled by Trinity). (Compl., ¶¶ 96, 99-100, 111; App'x A, p. 28-30 (court order prohibiting any automatic transfer of legacy Unity members to Trinity); Exhibit B; Exhibit C.) Trinity's internal records confirm that Larson never entered into a relationship – contractual or otherwise – with Trinity. (Guarino Decl., ¶ 6.) Larson never submitted any documents or payments to Trinity, and Trinity never facilitated any sharing requests on Larson's behalf. (*Id.*, ¶¶ 7-11.) Trinity

7

has no records identifying Larson as one of its members, (*id.*, ¶ 9), and did not derive any income or funds from Larson at any point in time (*Id.*, ¶¶ 10-11).

### b.   Lund.

Lund also fails to allege any injury fairly traceable to Trinity. Lund only alleges that she was "worried" that Trinity *might* deny benefits in the future. (Compl., ¶ 86.) Her claims do not add facts that support or expand this position. (*Id.*, ¶¶ 96, 99, 110-11, 118-20.) Instead, Lund admits that she unilaterally terminated her membership with Trinity based on her fear that Trinity *might* unjustifiably deny her *future* sharing requests such that it would have breached their agreement, violated the CCPA, and/or breached its fiduciary relationship. (*Id.*, ¶¶ 96, 99, 110-11, 118-20.) Trinity did not have the opportunity to do any of these things, however, and therefore any hypothetical injuries Lund may have suffered are not fairly traceable to it. Lund's remaining allegation that she "had medical expenses" that were shared at less than "what she understood would be covered," are too vague, lack any detail, and are insufficient to trace any alleged injuries to Trinity's conduct. (*See id.*, ¶ 86.) They are also undermined by Lund's own allegations that she failed to meet her deductible. (*Id.*, ¶¶ 83-84, 86.)

### c.   The Beards.

The Beards' claims presume Trinity: sold them a product/service; which did not provide the coverage the Beards anticipated; certain of their claims were denied; and that, as a result, the Beards were damaged. (Compl., ¶¶ 88-94.) None of these allegations are linked to Trinity's conduct.

The Beards concede they enrolled in Unity's HCSM in August. (*Id.*, ¶ 88.) The Beards did not begin their relationship with Trinity until June 14, 2019. (Exhibit D; Gaurino Decl., ¶¶ 21-22.) The Beards also do not allege that *Trinity* made any representations to them at any point in time. (Compl., ¶ 88 (alleging representations came from Unity).) Accordingly, any injury resulting from the Beards' reliance on Unity's representations cannot be connected to Trinity.

In addition, the Beards do not allege that *Trinity* denied any benefits. (*Supra*, 2-3.) On the contrary, their surgery request and preauthorization denials and appeals all occurred before the Beards were members of Trinity's HCSM, and the facts further demonstrate that the Beards made only one sharing request to Trinity and it was *approved*. (*Id.*) Since the Beards' injuries are limited to this denial, (Compl., ¶¶ 93-94), the Beards have failed to allege any conduct fairly traceable to Trinity.

## 2.   Plaintiffs Lund and the Beards Also Fail to Allege an Injury-in-Fact.

"[I]njury that depends on speculation or conjecture" cannot confer standing. *Grider v. City & Cty. of Denver*, 958 F. Supp. 2d 1262, 1266 (D. Colo. 2013). "[P]ossible future injury [is] not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal citations and quotations omitted). Allegations must be "concrete and particularized." *Lujan*, 504 U.S. at 560. Where based on the possibility of future harm, that harm must be imminent such that it is "*certainly impending*." *Clapper*, 568 U.S. at 409 (emphasis original). "[F]ears of hypothetical future harm that is not certainly impending" do not confer standing, and a plaintiff may not "manufacture standing merely by inflicting harm on themselves" based on such fears. *Id.*, at 416.

Lund and the Beards both rely on the *terminated* possibility of future harm. But standing cannot be predicated on future conduct that is no longer possible. *Clapper*, 568 U.S. at 409 (future harm must be "certainly impending"). Lund alleges that she "became worried that Defendants *would not* pay the maternity benefits." (Compl., ¶ 86.) (emphasis added). Based on this worry, Lund cancelled her membership. (*Id.*) Accordingly, Lund is left only with the possibility that Trinity may have acted to deny sharing in her maternity expenses. Whether a denial would have occurred is now purely hypothetical, and Lund may not manufacture standing by predicting what Trinity might have done. *Clapper*, 568 U.S. at 416.

Similarly, the Beards alleged they sent demands for sharing and received denials before their relationship with Trinity began. (*Supra*, 2-3.) The Beards do not allege they submitted any sharing

requests to Trinity, and therefore whether Trinity would have denied such requests is purely hypothetical, and relies on future conduct that is no longer possible. (Compl., ¶ 89.)

In an effort to avoid this result, Lund alleges that "Aliera/Trinity employees" convinced her that her deductible would be higher, and her coverage would be less. (Compl., ¶ 86.) This allegation is insufficiently particularized to constitute a present injury sufficient to confer standing. *Lujan*, 504 U.S. at 560 (allegations of injury must be "concrete and particularized"). Lund does not even distinguish between Aliera and Trinity, two separate entities, much less does she describe with any level of detail the substance of the conversations that led her to believe an actual injury was imminent.

The Beards try to avoid this result by relying on Aliera's alleged *prior denial* while in partnership with Unity. The Beards have not alleged one fact suggesting that a sharing denial by Trinity was "certainly impending" (or that they ever even made a request) and their fear based on the past conduct of separate entities cannot change this fact.

### C.   Plaintiffs' Claims Should be Dismissed Pursuant to Rule 9(b) and Rule 12(b)(6).

#### 1.   Plaintiffs Fail to Plead Their CCPA Claim With Particularity.

Plaintiffs allege that Trinity committed "unfair acts or practices that are *deceptive* or *misleading*," or are potentially so. (Compl., ¶ 100.) Courts routinely hold that such CCPA allegations should be evaluated under Rule 9(b). *See, e.g.*, *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115, 1120–21 (D. Colo. 2011); *Hansen v. Auto–Owners Ins. Co.*, No. 09–cv–02736, 2010 WL 749820, at *2 (D.Colo. Mar. 4, 2010); *Duran v. Clover Club Foods Co.*, 616 F.Supp. 790, 793 (D.Colo.1985). In particular, a valid CCPA claim must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *HealthONE of Denver*, 805 F. Supp. 2d at 1121.

Plaintiffs' Complaint fails to satisfy Rule 9(b) for three reasons. First, Plaintiffs do not identify the party that made false/misleading statements. *HealthONE of Denver*, 805 F. Supp. 2d at 1121

(requiring such identification). Instead, *every* allegation contained in Plaintiffs' CCPA claim alleges only that "Defendants" made false or misleading statements. (*See* Compl., ¶¶ 100-04.) This is insufficiently particularized because Trinity and Aliera are separate corporate entities. (Compl., ¶¶ 2-4.); *see also Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1237 (10th Cir. 2000) (dismissing under Rule 9(b) where plaintiff failed to "identify any specific Defendant who made [the] alleged fraudulent misrepresentations"). Indeed, courts in this district dismiss claims under the more forgiving Rule 12(b)(6) standard where allegations fail to "break down which [d]efendant engaged in what conduct." *RV Horizons, Inc. v. Smith*, No. 1:18-CV-02780-NYW, 2019 WL 1077366, at *12 (D. Colo. Mar. 7, 2019) (dismissing such allegations as insufficiently pled under Rule 12(b)(6).)

Relatedly, Plaintiffs Larson and the Beards admit they first enrolled in programs offered by Aliera and Unity. (Compl., ¶¶ 70, 88.) Indeed, the Beards affirmatively allege that their understanding of the programs came directly from Aliera and Unity. (*Id.*, ¶ 88.) Plaintiffs do not provide any non-conclusory allegations describing any representations made to them by *Trinity* or how such representations were false.

Second, though Plaintiffs allude generally to the content of certain supposed fraudulent statements, they fail to identify when and where these allegedly false or misleading statements were made. *HealthONE of Denver*, 805 F. Supp. 2d at 1121. Here, this is grounds for dismissal, in particular because without *also* identifying who made the offending statements, Trinity is without notice or basis to determine whether Plaintiff's CCPA claim is even brought against Trinity (as opposed to just Aliera).

Finally, Plaintiffs fail to allege the consequences of any false statements. *HealthONE of Denver*, 805 F. Supp. 2d at 1121 (must identify the "false statements and ***the consequences thereof***") (emphasis added). While Plaintiffs allege they received deficient services, they do not allege either that they contracted for such services in reliance on any act by Trinity, nor do they allege that the services

were deficient as a result of any act by Trinity. Accordingly, even if Trinity made some false statement, Plaintiffs do not connect such statements to any consequence suffered by them.

### 2. Plaintiffs Fail to Allege Deceptive Trade Practices.

False representations that qualify as deceptive trade practices under the CCPA "must either induce a party to act, refrain from acting, or have the capacity or tendency to attract consumers." *Rhino Linings USA,* 62 P.3d at 147; *HealthONE of Denver*, 805 F. Supp. 2d at 1120 (same). The statement must also be made with knowledge of its falsity (or a reckless disregard), and with an intent to deceive. *Rhino Linings USA,* 62 P.3d at 147; *Hansen*, 2010 WL 749820, at *4 (same). The challenged representation must also be alleged to have caused the plaintiff's injury. *Garcia v. Medved Chevrolet, Inc.,* 263 P.3d 92, 98 (Colo. 2011) (noting that "[r]eliance often provides a key causal link between a consumer's injury and a defendant's deceptive practice"). Plaintiffs do not allege these facts.

First, Plaintiffs have not alleged that *Trinity* made any statement that induced them to act, or had the capacity or tendency to attract customers. Instead, they list allegedly false statements of the "Defendants," and then assert without explanation that these statements caused them injury. (Compl., ¶¶ 100-04.) These are the very "threadbare" and "formulaic" recitals, especially as they relate to Trinity, that Rule 12(b)(6) prohibits. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. Plaintiffs do not allege what statements Trinity has *ever* made to *anyone*, including them. Indeed, Plaintiffs affirmatively allege that Aliera is the *sole* provider of all marketing, sale, and administration services. (Compl., ¶ 7.) Moreover, Plaintiffs Larson and the Beards' allegations make any actual reliance on Trinity impossible as a matter of law. (*See supra*, 1-3.)

Second, Plaintiffs are required to allege that any false statements were made knowingly or recklessly with an intent to deceive. *Rhino Linings USA,* 62 P.3d at 147; *Hansen*, 2010 WL 749820, at *4 (same). In addition, a plaintiff must plausibly plead "the purpose of [the] deceit." *Two Moms & a Toy, LLC v. Int'l Playthings, LLC*, 898 F. Supp. 2d 1213, 1216, 1220 (D. Colo. 2012). Plaintiffs have

failed to allege that Trinity made any statements at all, much less that such statements were made knowingly/recklessly or made with an intent to deceive Plaintiffs. Moreover, the Complaint fails to plausibly plead any purpose to any knowingly false statement by Trinity.

### 3.      Plaintiffs Fail to Allege a Public Impact.

CCPA claims require alleging a significant public impact. *Rhino Linings USA*, 62 P.3d at 149. Challenged practices must have "previously affected other consumers" or must have "the significant potential to do so in the future." *HealthONE of Denver*, 805 F. Supp. 2d at 1122; *see also Martinez v. Lewis*, 969 P.2d 213, 222 (Colo. 1998) (*en banc*) (insufficient public impact where "no allegation that consumers of [defendant's] services were previously affected by his alleged misrepresentations or likely to be so affected in the future.")

Here, Plaintiffs have pled that Trinity no longer does business in Colorado, (Compl., ¶ 65), so there is no future harm, and Plaintiffs fail to plead any past public impact. Instead, they simply list what they believe are deceptive trade practices, but fail to explain how they have actually harmed the public (*e.g.*, sales, number of people impacted, etc.). (Compl., ¶¶ 100-04.) Plaintiffs only plead they are individuals disappointed with the scope of their claimed contractual rights, and it is settled that a plaintiff may not, without more, convert a contract claim into a CCPA claim. *Rhino Linings USA*, 62 P.3d at 148.

### 4.      Plaintiffs Fail to Plead a Breach of Fiduciary Duty.[6]

Each Plaintiff fails to allege that any denial of their claims constituted a breach of fiduciary duty by Trinity. A breach of fiduciary duty requires that Plaintiffs plead "specific facts from which a factfinder could infer . . . [a] breach of the fiduciary duty." *RCHFU, LLC*, 2018 WL 1535509, at *5.

---

[6] Plaintiffs Lund and the Beards fail to plead damages, which is a requirement for a fiduciary duty claim, for the same reasons they fail to plead an injury. *RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, No. 16-CV-01301-PAB-GPG, 2018 WL 1535509, at *5 (D. Colo. Mar. 29, 2018).

Plaintiffs' sole basis for alleging a breach of the fiduciary duty is "Defendants" denial of Plaintiffs' claims for reimbursement of medical expenses. (Compl., ¶¶ 113, 115.)

Larson fails to allege a breach of the fiduciary relationship because she did not have a relationship with Trinity at all. (*Supra*, 1-2.) Similarly, the Beards fail to allege a breach because they fail to allege *both* that they made any claims for reimbursement of medical expenses *to Trinity* and they fail to allege that Trinity denied any such claims. (*Supra*, 2-3.) Lund fails to allege a breach of fiduciary duty because she only generally alleges that she thought she was entitled to certain amounts of coverage and that she terminated her membership because she was "worried" she would not receive such coverage. (*Id.*, ¶¶ 86.)

### D.    Alternatively, the Court Should Abstain.

There are sound bases to dismiss this action, but if the Court disagrees, it should nevertheless abstain from exercising jurisdiction under *Burford v. Sun Oil Co.,* 319 U.S. 315 1424 (1943) or *Younger v. Harris,* 401 U.S. 37 (1971). *Burford* abstention is appropriate where federal review would disrupt state efforts to establish coherent policy regarding matters of public concern. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 361(1989) (citations and quotations omitted); *see also Grimes v. Crown Life Ins. Co.,* 857 F.2d 699, 703 (10th Cir. 1988). *Younger* abstention compels abstaining where: (1) there is an ongoing administrative proceeding; (2) the state court forum can address the claims in the federal complaint; and (3) the state proceeding involves important state interests. *Winn v. Cook,* 945 F.3d 1253, 1258-59 (10th Cir. 2019) (quoting *Chapman v. Oklahoma,* 472 F.3d 747, 749 (10th Cir. 2006)).

The Colorado Division of Insurance's ("CDI") order regarding Trinity warrants *Burford* abstention.[7] (Compl., App'x H.) The CDI regulates insurance, including trade practices. *See* §§ 10-1-

---

[7] Trinity is not insurance and denied any admission of wrongdoing or violation of Colorado's insurance code in the consent order.

103(1); 10-1-108(7); 10-1-301-310; 10-3-1106, C.R.S. Its regulatory oversight involves a "complicated state regulatory scheme." *See Lehman v. City of Louisville,* 967 F.2d 1474, 1478 (10th Cir. 1992). Plaintiffs' Complaint seeks judicial oversight of the same issues the CDI is reviewing. *See* (Compl., ¶¶ 49-58, 96(a), 99; App'x H, ¶¶ 4-7.)

For example, Plaintiffs request that this Court declare *every* sharing program offered by Trinity for *every* Trinity HCSM member in Colorado illegal and rescinded. (Compl., Count A.) Such a conclusion conflicts with the Division's findings, interferes with its oversight of Trinity, and interferes with its oversight of the business of insurance in Colorado. *See, e.g., Lacy v. Old Standard Life Ins., Inc.,* No. 04-CV-02351-EWN-OES, 2005 WL 8171866, at *5 (D. Colo. Sept. 8, 2005) (abstaining where litigation required resolving issues of insurance regulation).

*Younger* abstention is also appropriate. First, the investigation was judicial and coercive in nature. *See, e.g.,* C.R.S. §§ 10-1-108(5) (duty of commissioner to investigate violations of the insurance laws of Colorado); 10-3-904-10-3-904.7 (providing power of Commissioner to issue orders and conduct investigations). Second, the proceeding implicates the important state interest of regulating insurance. *See* § 10-1-101, C.R.S. (describing legislative purpose). Third, none of Plaintiffs' claims against Trinity involve "constitutional" challenges (or any other federal claims). Finally, although non-parties to the agency proceeding, Plaintiffs are attempting to act on behalf of the CDI in having Trinity and its sharing programs declared illegal insurance and purportedly seeking to vindicate rights for all of the members of Trinity's HCSM.

## IV.   CONCLUSION

For the reasons described above, Trinity respectfully requests that the Court dismiss this action in its entirety and with prejudice.

Dated: May 29, 2020                    Respectfully submitted,


                                       BAKER & HOSTETLER LLP

                                       By:    /s/ Matthew C. Baisley
                                              Matthew C. Baisley (No. 45437)
                                              Laurin D. Quiat (No. 14687)
                                              1801 California Street, Suite 4400
                                              Denver, CO 80202-2662
                                              Telephone: (303) 861-0600
                                              Facsimile: (303) 861-7805
                                              lquiat@bakerlaw.com
                                              mbaisley@bakerlaw.com

                                       *Attorneys for Defendant Trinity HealthShare, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that on May 29, 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

**Eleanor Hamburger**
**Richard E. Spoonemore**
Sirianni Youtz Spoonemore Hamburger PLLC
3101 Western Avenue, Suite 350
Seattle, WA 98121
Email: ele@sylaw.com
Email: rick@sylaw.com

**Victoria Edna Lovato**
Michael Best & Friedrich LLP-Denver
1776 Lincoln Street, Suite 1100
Denver, CO 80203
Email: velovato@michaelbest.com

**Michael David Myers**
Myers & Company, PLLC
1530 Eastlake Ave East
Seattle, WA 98102
Email: mmyers@myers-company.com

*/s/ Matthew C. Baisley*

17